May it please the Court, I'm Dan Wilson representing the appellant in this case. I'd like to reserve two minutes for my rebuttal argument. The two issues raised in this case have to do, number one, with the sufficiency of the evidence, and number two, whether or not evidence should have been suppressed. I'd like to address them in that order. With respect to the sufficiency of the evidence, I think it bears noting that the gun in this case was an unusual appearing gun. For all the world, did not appear to be a typical shotgun in the sense that we envision them being like a single barrel or a double barrel shotgun that breaks at a hinge and opens to be loaded or unloaded. This was a gun that looked like a rifle. It was a bolt action shotgun with a relatively small barrel. And the question I think that the Court should focus on, or the issue that the Court should focus on, is the aspect of the gun, what exactly is the barrel? What part of that gun is the barrel? If we look to the statute, we see no guidance. The statute that prohibits possessing a shot-off shotgun that has an overall length less than 26 inches or a barrel length less than 18 inches, no part of that statute actually defines what is the barrel as opposed to the other parts of the gun. And being a bolt action in this case, there is a question from the record based on the ATF agent's testimony about what part of the gun was actually measured when he came to the conclusion, as he stated in his testimony, I believe that the barrel was approximately 14 inches. And he goes on to describe that he measured the barrel, or at least took the measurement that he calls the barrel length from the tip of the gun to an opening. Now, because this gun consists of a wooden stock and a trigger mechanism and a bolt and a long tube, or in this case a relatively short tube, from the tip to some point back at the bolt, there's a question of where was the measurement taken? The indictment wasn't based solely on the length of the barrel, right? Excuse me? The alternative was the overall length. The alternative was the overall length. And the overall – Didn't the jury see the gun? The jury saw the gun. Isn't there enough evidence from which to conclude whether or not the defendant should have known the overall length was less than, what is it, 24 inches, something like that? The overall length was 24-and-a-half inches, as the ATF agent testified. And understanding that the Court's decision in Gergen followed the United States Supreme Court's decision in Staples, where the Staples court said that circumstantial evidence could be used to prove a defendant's knowledge of the characteristics of the gun that bring it within the prohibition of the statute, and those external characteristics are relevant consideration. But given the fact that in the circumstances of this case, we're not dealing with a collector. We're not dealing with a person who had possession of this gun for a long period of time. But he had it in his hands. He was sawing it. That's pretty good possession, isn't it? The possession is not disputed. The knowledge of the characteristics of the gun is.  of the gun? Is the government obligated to show that he took a measuring tape and measured the thing at the house before he took it out? I don't think so. I think that in the Gergen case, the Court made it amply clear that in that case, the gun, the barrel length was approximately 13 inches. And the Court said that the jury could find, based upon that fact alone, that the defendant knew that the characteristics of the gun brought the barrel length under the 18 inches. But with respect to the statute, I don't think so. Apparently, he's putting the hacksaw to the barrel, and his friend says, don't cut it there, cut it somewhere else. So, I mean, that means, you know, he must have, like, gauged what he thought was the length, right? He had to look at the gun to see, well, how long is this? I mean, isn't that sufficient evidence? No, I don't think so. I mean, if you're looking at the gun and the question is, do you know if the barrel is under 18 inches? Isn't the real purpose for wanting to, for that knowing element there, to prevent somebody from handing them a gun in a shotgun case, but you're carrying the case around without really seeing what the thing is, and so you're not responsible because you really didn't know what you were holding. That's the guy who's handling the gun and cutting the barrel off. What more did the government have to prove here? I think what the government needed to show, number one, was how was that measurement of the barrel taken, and how can we take the ATF... But we have two measures here in the statute. One is the measure of the barrel, which you told us is different because it wasn't a hinged shotgun. It was a bolt-action shotgun. The other is the overall length, and this gun fails on both of those accounts. It does in a technical sense and an after-the-fact sense, but if you look at the gun, I defy anybody to look at something that's 24 and a half inches long and without any sort of measuring device to compare it to, to know beyond a reasonable doubt that that gun is less than 26 inches long. I just don't think that the average person can do that, and there wasn't any evidence in this case that there was before the... Well, then your answer to Judge Bider's earlier question is maybe the opposite. You can't prove knowledge unless you can prove that the defendant actually measured it. I don't think that... That's not what you're saying. I don't think that that's true. I think in the Gergen case, the barrel length was unquestionably approximately 13 inches. I think that a person, the jury, could attribute knowledge that the barrel was under 18 inches to the defendant based on that circumstances because of the wide disparity. In this question, the barrel length, there's a question about what it actually was, certainly based on the record. And I think that if you added an inch or two to that 14 or approximately 14 inches, you've got a real question there whether a person would know beyond a reasonable doubt. And I think going back to the Staples case, as Justice Thomas said and that the purpose of the Court in inserting this mens rea argument is not to ease the way for the prosecution. But I think that taking the approach that's suggested by the government does precisely that. It sort of makes a salutary effort to comply with that requirement of knowledge. Well, let me understand this. Are you arguing that — are you arguing — in your brief, I thought your argument was that he — that the government didn't show that he knew that it was an illegal length. Now you seem to be arguing that the government didn't prove that it was an illegal length. I think what I'm arguing in the brief and what I'm trying to argue today is that from the evidence, it's not clear, number one, what the actual length of the barrel was. And because the actual length of the gun being 24 and a half inches is so close to 26 and a half inches that a person looking at it would not be able to know beyond a reasonable doubt that it fell beneath that 26-inch threshold. Just from looking at it, although you're not arguing that it, in fact, did not fall. I'm not arguing that it didn't fall within those parameters. Just that he wouldn't — that you couldn't tell from looking at it, even though he was the one who sought it out. Correct. How would he know? Okay. Thank you. I'll reserve the rest of my time. Good morning, Your Honors. May it please the Court. My name is Josh Van DeWettering. I'm Assistant United States Attorney appearing for Chris McClain this morning from the Missoula office. With respect to the barrel length, I would disagree with the defendant on probably about every point, beginning with whether or not it was clear in the trial that because it's a bolt action, what the length of the barrel is. And I would suggest that there's no difference between breaking open a shotgun that has a hinge and measuring from the point of that break where the shell goes in to the end of the barrel, or pulling back a bolt and measuring from where that bolt allows a shell to be put in to the end of the barrel. And to that extent — Is that the ATF position? Like, is there a regulation on that? I'm not aware of any regulation on that, either, Your Honor, or what — Using common sense? Just using common sense. No, I've never seen a bolt action shotgun, but the barrel starts at the front opening of the chamber? Right. I assume it works just the way a bolt action rifle does, where you put the shell in after you pull the bolt back, just the way when you break a shotgun open, you put the shell in at the break. So the shell goes in right there. So essentially, the measurement is the same from the base of the shell when it's in to the end of the barrel. And that's exactly what the agent testified to. That's different from what — I think what I thought Judge Tashima asked you. I thought Judge Tashima asked you whether it would go from the front of the opening where the bolt — where the bolt pulls back from the front opening to the barrel. That would be a very different measurement than if you measured to where it's — to the back part where you pulled the bolt. And I'm not saying the back part. I'm saying when you open the bolt, you've got a hole that's, what, a couple of inches wide? You measure from the front — from the portion of that hole that is closest to the front of the barrel. Correct. Okay, so that would be the shortest measure, then. That would be the shortest measure. But also, that's the same measure that you would measure if you had broken open a shotgun. Because a shotgun broken open, you place the shell in, and you're essentially measuring from the base of the shell, where it seats in the barrel, to the end of the barrel. No, but the base of the shell on the bolt action is at the other end of the opening, see? Well, not after you — not after you fire the bolt — or put the — lock the shell in with the bolt. So it's from the — Is it clear that the agent's testimony used the measure that you've described for us here? I believe it is, Your Honor. Yes, Your Honor. Here's what he says. Basically, what we can do is pull the bolt back on the firearm, open it up — Can you give me a — you got a page there? Yes, Your Honor. Excerpts of Records, page 276. 276. Okay, go ahead. What we can do is pull the bolt back on the firearm, open it up, and measure the bolt. He corrects himself and says the barrel. From where it began, from the opening to the end, the measure was, I believe, approximately 14 inches. It seems clear to me that he's talking about the measurement from the shortest possible measurement. Even if he were talking about the longer version, though, that would simply make the gun more obviously short. So I don't think there's a real distinction there that the defendant seeks to offer. There's not an extra couple of inches there. If anything, there are a lesser couple of inches. With respect to whether it's not as obvious, though, I think merely the jury's verdict suggests that it is. The defendant complains that there was no measurement during the trial or in court to show the jury exactly what this measurement was. Well, what does that show other than the shortness is obvious by its external characteristics, which is exactly the burden the government has to prove. I think we've clearly proven, even aside from Mr. Gergen's, or excuse me, Mr. White's having altered the gun himself, that he had knowledge. To adopt the rule the defendant suggests would essentially, I think, give a free pass to people who have sawed-off shotguns. Their answer would simply be, just don't measure the thing, cut it off as short as we need it to be. As long as we don't know for sure, there's no problem. And I don't think that's what the law really intends. I'd like to address also the search issue the defendant raises, particularly with respect to whether or not the incriminating nature of the ID is immediately obvious. And it seems to me that in this case, defendant seems to be... Well, what do you mean by incriminating nature? Incriminating nature, you mean the name and the address, or what? Well, and that's exactly what I'm getting to, because I don't think the incriminating nature is the name and the address. And the defendant seems to be suggesting that the officer needs to understand immediately upon seeing that ID, not only that it has an incriminating nature, but exactly what that incriminating nature is and how it's to be used. And in this case, that's probably impossible. We've walked into a house where we know a man is suspected of a violent... It's impossible? Practically impossible. Let me explain why, if I may. We know, we have an officer who's walked into a house. He knows about a man that he's probably committed a violent assault and he's searching for evidence with respect to that. And he knows that there's another woman involved in that assault somewhere. He knows that the person has been charged with robbery and has apparently been involved in robberies. He walks into the house and he sees what appear to be burglarized items, including stereo equipment. And he also finds drug evidence. So here we've got a guy who's apparently involved in drugs, in robbery, in violent assaults and apparently in burglary. At the time, the officer lifts the mattress and sees, hidden beneath the mattress and taped up, an identification card. What conclusion could you draw other than this item is incriminating in nature? I don't know exactly if it goes to the robbery or the burglary or the drugs or the assault. But merely from the fact that it's taped up and based on this man's criminal history, there can be no doubt that it is of incriminating nature. The mere fact that he has secreted it underneath the mattress and tapes it up that way shows that it's incriminating. And I don't think the law requires that officer to know right now as he looks at it, oh, well, that's the person. I mean, that rule just means if something's hidden, it's, you know, incriminating so you can examine it. No, not if it's just hidden. But certainly if there's some rational connection to a crime that you know about, here there's arguably a rational connection. You don't know that until you unravel it. You don't know which crime it's connected to, Your Honor. But I think you do know that it's connected to one of the crimes he's involved in. Unless the Court has other questions, that is all I have. I understand your position. Thank you. First, I'd like to take issue with one of the arguments that the U.S. attorney made that the jury saw the gun and so therefore decided the verdict because it was obviously a short gun. I believe that you can't make that argument really in good faith given that the jury heard the testimony of the ATF agent describing the length of the gun and there's no evidence that the jury relied on merely the sight of the gun in their own judgment and discarded what was a vague description by him of how he measured the gun and the overall length and the barrel length. But the jury did see, I mean, the jury did see the gun. I mean, the gun was before them. Yes, Your Honor. With respect to the search issue, the, I take issue with Mr. Vandwerding's characterization of the record. The agent, when he testified, or excuse me, the deputy who found the ID documents did not testify that he believed that there was a robbery that Shane White was involved with before he conducted the search. What he testified to was that the woman who had reported the assault at the trailer said that Shane White was wanted for a burglary and a robbery being different than a burglary, that is what prompted the deputy cooperator to take particular notice of the stereo equipment and the telephones and so forth that were found in the trailer and that's what prompted him to ask his dispatcher to get in contact with Butte Police. Our position is that when the deputy saw this ID packet fall onto the ground and he testified and there was a photo introduced that it fell face up, that he had no idea that it was connected to any crime. And the district court found that because there was some conversation a couple of days before the search between Mr. White and this alleged victim of the assault in his trailer about procuring a third person for some sexual activities that this ID might be somehow related to that transaction. But there's no evidence in the record that would suggest that between those, that conversation two days before the search and the actual search that Cheryl Downs actually procured a third person. The deputy, in fact, testified that when he saw it, he had no idea that it was connected to any crime and his suspicions that it might be evidence associated with any crime were only aroused after he cut the tape open and examined all the documents and saw that the woman was from a different town, a distant town in Montana called Three Forks, not in Helena. And that was the only thing that aroused his suspicion. It's our position that under Arizona versus Hicks, when the officer bent over and picked up that ID document and looked at it, he performed the search and that the only connection between the inevitable or the eventual linking of this ID packet to the crime that occurred eight months earlier was his search. Thank you, Your Honors. Case just argued is submitted for decision. We'll hear the next case, which is United States versus Dole.
judges: Schroeder, Tashima, Bybee